# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

DIANE BACKIS,

Defendant.

Hon. Mae A. D'Agostino
Docket No.: DNYN
1:16CR00335-001

## SENTENCING MEMORANDUM

## Preliminary Statement

The Defendant, Diane Backis is a fifty-two year old wife and daughter who has no prior criminal history. Diane was born and raised in the Capital Region and lives together with her husband John Paul. Diane stands ready to accept the sentence imposed by the Court for the crimes of Mail Fraud, in violation of 18 U.S.C. § 1341 and Filing a False Income Tax Return, in violation of 26 U.S.C. § 7206(1). Diane has been ready to accept that sentence since the moment she was confronted by the FBI in the Spring of 2016. Since that time, Diane has fully cooperated with the Government's investigation and her cooperation has helped resolve a significant and complex matter.

Since the FBI confronted Diane in the Spring of 2016, she has gone to bed every night and sat down at every meal thinking about the crimes she committed; their wrongfulness; and what action she could take to try and right her wrongs. Understanding the gravity of her situation and scope of the financial harm incurred, Diane has made significant efforts to help undue the harm she caused by fully and completely cooperating with the Government and making every

effort toward restitution and satisfying the Government's restitution/forfeiture demands. As described in more detail below, Diane's conduct since being confronted by the FBI, provides insight into her remorsefulness, the improbability of recidivism, and her acceptance of responsibility.

Insight into Diane's character is also available to the Court through the letters of support provided by Diane's friends and family. The letters are collectively attached as Exhibit "A" and each demonstrates two important characteristics about Diane: (1) that she has substantial support waiting for her once she completes her term of incarceration; and (2) valuable insight into the caring individual she is outside of the context of the conduct which brings her before the Court for sentencing.

We respectfully request that the Court, faced with the task of imposing a "sufficient" sentence that is "not greater than necessary", fully consider the arguments and attachments enclosed herein. 18 U.S.C. § 3553(a). After considering the entirety of this Sentencing Memorandum, we request that the Court impose a Sentence of 51-63 months since that sentence appropriately accounts for the seriousness of Diane's conduct while considering who she is and who she still can become.

**Guideline Calculations**

Under U.S.S.G.§ 2B1.1, and pursuant to the Plea Agreement, Diane's base offense level for Count One is a seven (7). Twenty (20) additional points are added for the $25,000,000 loss pursuant to U.S.S.G § 2B1.1(b)(10)(K). For Count Two, the Base Offense level is sixteen (16) pursuant to U.S.S.G. § 2T4.1(F). After reviewing the totality of the evidence, we concede that a two (2) point enhancement for Sophisticated Means, U.S.S.G. § 2B1.1(b)(10(C) is appropriate.

After grouping the offenses pursuant to §3D1.2(d) , Diane's combined offense level should be a 28.

**Factors to Consider For a Sufficient Sentence under 18 U.S.C. § 3553(a)**

In imposing a sentence that fits Diane's crimes and that considers who Diane is and who she can become, the Court is tasked with imposing a "sufficient" sentence that is "not greater than necessary" to account for the seriousness of the crime, the need for deterrence and the need to provide Diane with training and/or treatment. 18 U.S.C. § 3553(a) ("Sentencing Factors"). As demonstrated below, a thorough analysis of the Sentencing Factors militates in favor of our requested sentence.

*The history and characteristics of the Defendant*

Diane loves and enjoys caring for people. She provides for and takes care of her family and loved ones. The character statements from those closest to her speak to her generosity, compassion and support. *See* Exhibit "A". The Brockner family tells about Diane taking in and helping raise her nephew and the positive impact she had on his life. The Brockners also tell about how Diane helped provide for a family who lost everything in a fire – providing them with household items, clothing, toys and organized members of the community to help the family that lost everything. Vanessae McDermott tells about the guidance and support Diane provided her by helping her find and maintain an apartment and help her complete a job application that ultimately led to Ms. McDermott obtaining employment. Tamara Martin tells the Court about how Diane provided for her neighbor's children to make sure they could celebrate holidays and family dinners. Larry Miller, her former supervisor at Cargill, describes how Diane always took the lead on Cargill's giving projects and that she was the "most considerate and caring person." *Id*.

These glimpses into Diane's life and character show that she is someone who deeply cares about others and providing for others. Indeed, seeing people in need and wanting to provide for people in need was the driving motivation behind the underlying criminal conduct. The first time she stole was after her father came to her in 2006 asking for money. Diane, wanting to help and without the means to do so, saw an opportunity with an endorsed check which she could deposit into her own account. Diane took the check for herself and began manipulating records to cover the loss.

Diane did not primarily spend the proceeds of the offense on herself. Rather, she spent it on supporting her father (until his death), supporting her nephew and supporting people in her life who were in need. There is no question Diane also spent the proceeds on herself (directly and indirectly), but it is important to note that Diane supported others and did not spend the proceeds on other elicit or frivolous pursuits such as drugs, drinking, gambling and the like. While this distinction provides no comfort to Cargill, it is nonetheless an important distinction that helps the Court understand *why* a woman with no criminal record would commit such a crime.

Throughout her life, Diane has always taken care of those in her life: her husband, her father, her nephew, her neighbors and friends. That care and compassion will be paid forward to Diane now that she will need support in the future. As indicated in the attached letters, Diane has tremendous family and community support to help her once she completes her sentence. That support is a testament to who Diane is and provides valuable insight into her character, her strong prospects for rehabilitation and her low risk to reoffend.

*The Nature and Circumstances of the Offense*

Diane's offenses are simple. She took money that did not belong to her, failed to pay taxes on the illicit income and manipulated records to cover up the theft. While simple, these offenses caused significant financial losses to Cargill and Diane fully accepts responsibility for that harm. While these offenses meet the threshold for sophisticated means enhancement, Diane's conduct and, more importantly, her position and relative authority at Cargill as a merchandising clerk who was responsible for things such as the mail, data input and some sales, does not justify an enhancement for Abuse of a Position of Trust pursuant U.S.S.G § 3B1.3.

*Abuse of a Position of Trust Enhancement Does Not Apply:*

A position of trust contemplates a position with a "quasi-fiduciary status" toward the victim, *United States v. Huggins*, 844 F.3d 118 (2d Cir. 2016), or at the very least, substantial professional and managerial discretion that is worthy of considerable deference. *United States v. Wright*, 160 F.3d 905, 910 (2d Cir. 1998). Typical examples of a position of trust include fiduciary relationships, like an attorney or a doctor. While a strict fiduciary relationship is not required for the enhancement to apply, there does need to be evidence that Diane was given considerable deference that rises to at least that expected of a quasi-fiduciary and that she exploited that status to commit the crime. Such responsibility categorically does not fall on a simple merchandising clerk who has no real discretion or authority.

To determine whether the Abuse of a Position of Trust enhancement applies, the Court is required to analyze two issues: (1) did the defendant occupy a position of trust from the victim's perspective; and if so (2) whether the abuse of that trust "significantly facilitated the commission of concealment of the offense." *United States v. Thorn*, 446 F.3d 378, 388 (2d Cir. 2006). The

victim's point of view, however, must be objectively reasonable. *United States v. Santoro*, 302 F.3d 76, 82 (2d Cir. 2002).

The PSIR contains no evidence and the Government has failed to produce any in support of the proposition that Cargill reasonably believed that it bestowed on Diane a quasi-fiduciary level of trust and discretion and that Diane significantly leveraged that trust and discretion to facilitate the crime. Rather, the PSIR's finding that Diane was "entrusted by Cargill in her duties at the Port of Albany and it was an abuse of that trust which significantly facilitated the commence of the offense…" is conclusory and provides no nexus between Diane's duties and how those duties are akin to those of at least a quasi-fiduciary. *See PSIR* at 30. Restating the PSIR's logic demonstrates its failure to correctly apply this enhancement: "Cargill trusted Diane not to steal. Diane stole. Therefore, she abused their trust." As described below, the Second Circuit has expressly rejected such a summary application of the Abuse of a Position of Trust enhancement.

The truth is that Diane, after 30 years of working for Cargill, remained a mere merchandising clerk making barely $60,000 a year. Diane had no authority and had very little discretion over how to complete her limited tasks. In fact, Diane's job was largely administrative and primarily consisted of completing and mailing invoices and selling merchandise for Cargill at defined prices. Significantly, her failure to sell product at mandated prices (and subsequent cover-up) created the vast majority of the economic harm suffered by Cargill. Moreover, Ms. Backis' department and work were subjected to audits (indicating a lack of trust and discretion) and an audit exposed the underlying criminal conduct. Diane was never classified as a superior, a fiduciary, manager, or any type of decision maker at Cargill.

In the most basic terms, Diane was an employee who stole but she was not a trusted advisor who exploited Cargill's trust to effect the theft. Under these circumstances, Diane is much more

like a cashier slipping money into her pocket than a lawyer pilfering a trust account. Under these circumstances, any claim that Cargill, a highly sophisticated global enterprise, thought of and treated a merchandising clerk in Albany, NY as a quasi-fiduciary cannot be considered objectively reasonable, particularly in the absence of any evidence to support such a claim.

Furthermore, the Sentencing Guidelines precludes the application of the Abuse of a Position of Trust enhancement where the abuse of trust is part of the specific offense characteristics. U.S.S.G §3B1.1; *United States v. Jolly*, 102 F.3d 46, 49 (2d Cir. 1996); see also *United States v. Huggins*, 844 F.3d 118 (2d Cir. 2016) (No position of trust where defendant salesman had arm's-length contractual relationship with the victims of investment scheme). After all, some abuse of trust is inherent in every fraud. As a result, the base offense level for Wire Fraud already contemplates this conduct. If the Abuse of a Position of Trust enhancement were to apply to Diane, the enhancement would apply to virtually all fraud cases where a fraud victim is deceived through statements or conduct. *Jolly*, 102 F.3d at 49. Such a broad reading would transform the Abuse of a Position of Trust enhancement into a vehicle for double counting that impermissibly leverages an element of the crime as a basis for an enhanced sentence. Such a result is clearly an improper application of Guidelines and, therefore, the § 3B1.1 enhancement should not apply here.

Moreover, the Abuse of Position of Trust enhancement is categorically inconsistent with the application of the sophisticated means enhancement under the facts of this case. The Government argues that Cargill gave Diane sufficient flexibility and discretion that she took advantage of to commit the crime, but then argues that the crime was so cleverly executed that it evaded their detection. Under the facts (or lack thereof) presented here, these two enhancements contradict one another. Either Diane was not trusted and was monitored but her sophisticated

methods evaded detection; or she abused the trust and freedom Cargill provided. Cargill and the Government cannot have it both ways.

In sum, we believe that a two (2) point enhancement for sophisticated means is justified but that an abuse of a position of trust is not.

*The need for the sentence imposed*

The second factor the Court is required to consider is the need for the sentence imposed. This analysis requires the separate consideration of:

(a) whether the sentence reflects the seriousness of the offense, promotes respect for the law and provides just punishment;

(b) to deter criminal conduct;

(c) to protect the public from the defendant's future crimes; and

(d) to provide the defendant with needed training, education and/or treatment.

18 U.S.C. § 3553(a)(2). To start, this is a case about punishment, deterrence and restitution. Diane does not require treatment or training and Diane does not need to be incapacitated for the protection of society. As a result, an appropriate sentence here requires a fair punishment for Diane balanced against her ability to make restitution. Diane is under no illusion that she will have a judgment that she may never fully satisfy. Nonetheless, she wants to try to repay what she owes and Diane should be afforded the opportunity to begin the restitution process – a process that can only begin once Diane is released from prison – as soon as possible.

Our requested sentence of 51-63 months is fair and appropriate because it balances the §3553 (a)(2) factors as intended. With this sentence, Diane receives a significant period of

incarceration that, based on the guidelines, is consistent with the amount of loss that she actually received as part of her offense and incorporates the harm caused by the under-selling of grain.

Our proposed sentence also recognizes the arbitrary nature of the § 2B1.1 loss amount table. There is no rational reason or data supporting the demarcation between the loss amounts articulated in § 2B1.1 and the corresponding enhancements or why those enhancements exponentially increase culpability when the underlying crime is assigned a low offense level (here, a level 7 which permits probation). Furthermore, there is no distinction in § 2B1.1 between amounts a Defendant actually obtains as fruits of a criminal act and other "intended losses" that a Defendant never enjoys or benefits from. Such arbitrary and formalistic application of the guidelines has been widely criticized by the Courts. The Southern District of New York has even noted the "utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense." *United States v. Adelson*, 441 F.Supp.2d 506, 512 (S.D.N.Y. 2006). In recognition of this disparity, the Second Circuit has held that "[w]here the Commission has assigned a rather low base offense level to a crime and then increased it significantly by a loss enhancement, that combination of circumstances entitles a sentencing judge to consider a non-Guidelines sentence." *United States v. Algahaim*, 842 F.3d 796, 800 (2d Cir. 2016).

Here, the loss amount alone drives the principal offense from a probation eligible base offense level of 7 to a four-fold increase where Diane is exposed to over a decade in prison. Such a disparity, driven by loss amount alone, permits this Court to accept the Second Circuit's invitation to consider the non-guidelines sentence we have proposed.

Finally, our proposed sentence contemplates that Diane has been facing the prospect of this sentence since the day she fully confessed her crimes to the Government in April of 2016.

For eighteen (18) months, Diane has not committed any additional crimes and has fully cooperated with the Government's efforts to recover money for Cargill. Such cooperation in the face of such consequences demonstrates Diane's rehabilitative potential, her remorsefulness and acceptance of responsibility.

## Conclusion

Diane has cooperated, is remorseful and if given the opportunity, will work tirelessly to pay back what she wrongfully took from Cargill. We respectfully request that the Court impose a sentence of 51-63 months.

DATED: October 5, 2017

O'CONNELL AND ARONOWITZ

By: ___/s/*Scott W. Iseman*___
Scott W. Iseman, Esq.
Bar Roll No. 518859
Attorneys for Plaintiff
Office and P.O. Address
54 State Street
Albany, New York 12207
Phone: (518) 462-5601
Fax: (518) 462-2670

TO: All parties via CM/ECF